## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 02 2015, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ashley J. Todd, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 2, 2015 <br><br> Court of Appeals Case No. 02A04-1412-CR-588 <br><br> Appeal from the Allen Superior Court. <br><br> The Honorable Frances C. Gull, Judge. <br><br> Cause Nos. 02D05-1405-FD-484 & 02D05-1405-FD-571 |

**Riley, Judge**

## STATEMENT OF THE CASE

[1] In this consolidated appeal, Appellant-Defendant, Ashley J. Todd (Todd), appeals her sentence following her conviction for possession of methamphetamine, a Class D felony, Ind. Code § 35-48-4-6.1(a) (2013); maintaining a common nuisance, a Class D felony, I.C. § 35-48-4-13(b) (2013); possession of chemical reagents or precursors with the intent to manufacture, a Class D felony, I.C. § 35-48-4-14.5(e) (2013); and possession of paraphernalia, a Class A misdemeanor, I.C. § 35-48-4-8.3(a)-(b) (2013) (collectively, Cause Number 484), as well as her conviction for theft, a Class D felony, I.C. § 35-43-4-2(a) (2013) (Cause Number 571).

[2] We affirm.

## ISSUE

[3] Todd raises one issue on appeal, which we restate as follows: Whether Todd's sentence is inappropriate in light of the nature of the offense and her character.

## FACTS AND PROCEDURAL HISTORY

[4] On April 25, 2014, the Fort Wayne Police Department executed a search warrant at Todd's home in Fort Wayne, Allen County, Indiana. Therein, police officers discovered numerous ingredients used in the manufacture of methamphetamine, as well as more than 0.5 grams of methamphetamine. An aluminum foil "boat," commonly used for ingesting methamphetamine, and a wooden smoking pipe—both of which contained burnt residue—were also recovered. (Appellant's App. p. 20).

On May 1, 2014, the State filed an Information under Cause Number 484, charging Todd with Count I, possession of methamphetamine as a Class D felony; Count II, maintaining a common nuisance as a Class D felony; Count III, possession of chemical reagents or precursors with intent to manufacture as a Class D felony; and Count IV, possession of paraphernalia as a Class A misdemeanor. On May 5, 2014, Todd posted bond and was released from jail. Just eleven days later, Todd was shopping at a Sears store and was observed stealing a package of chainsaw blades, valued at $44.99. Todd was apprehended immediately after exiting the store, so Sears was able to recover its merchandise. On May 19, 2014, Todd's bond in Cause Number 484 was revoked, and on May 22, 2014, the State filed an Information under Cause Number 571, charging her with theft as a Class D felony.

On June 2, 2014, pursuant to a plea agreement, Todd pled guilty to all charges under both Cause Numbers 484 and 571. In accordance with the plea agreement, the trial court took Todd's guilty plea under advisement and placed Todd in the Drug Court Diversion Program (Diversion Program). Todd signed a Drug Court Participation Agreement, which provided that upon successful completion of the Diversion Program, both causes would be dismissed. It was further explained to Todd that if she failed to comply with the conditions of the Diversion Program, her participation would be revoked, and the trial court would enter a judgment of conviction on all charges and sentence Todd accordingly.

[7] As part of the Diversion Program, Todd was required to adhere to a plethora of conditions, including, in part, transitional living, submitting to urine screens, and maintaining good behavior. Within the first month of beginning the Diversion Program, Todd struggled to follow the rules of the Redemption House—her transitional living assignment. She admitted to smoking marijuana and was sanctioned by her transitional home. On June 26, 2014, July 2, 2014, and July 21, 2014, Todd's drug screens were diluted. Due to her violations, the Redemption House discharged Todd on July 11, 2014, but she was thereafter accepted into another transitional facility—the Rose Home. On July 21, 2014, the trial court ordered Todd's remand to the Allen County Jail until August 1, 2014, as a penalty for violating the Diversion Program's rules. On October 9, 2014, Todd was unsuccessfully discharged from the Rose Home after she purchased energy pills in violation of the Rose Home's rules. On October 14, 2014, the Diversion Program filed a verified petition to terminate Todd's participation.

[8] On November 14, 2014, the trial court conducted a sentencing hearing and entered a judgment of conviction on all charges in accordance with the plea agreement. In Cause Number 484, the trial court imposed a sentence of two years on each of the three Class D felonies, and a one-year sentence on the Class A misdemeanor, all to be served concurrently. In Cause Number 571, the trial court sentenced Todd to serve two years for the Class D felony. The trial court further ordered the sentences in Cause Number 484 and Cause Number

571 to be served consecutively, for an aggregate sentence of four years, fully executed in the Indiana Department of Correction.

[9] On December 15, 2014, Todd filed a motion to consolidate the appeals for Cause Number 484 and Cause Number 571, which this court granted on January 12, 2015. Todd now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[10] Todd claims that her sentence is inappropriate.[1] We first note that the trial court's order of two-year sentences for each Class D felony and a one-year term for the Class A misdemeanor falls squarely within the statutory sentencing parameters. *See* I.C. § 35-50-2-7(a) (2013) (providing that a Class D felony is punishable by "a fixed term of between six (6) months and three (3) years, with the advisory sentence being one and one-half (1 ½) years"); I.C. § 35-50-3-2 (providing that the commission of a Class A misdemeanor warrants a fixed term of imprisonment "of not more than one (1) year"). Because Todd was released on bond in Cause Number 484 at the time she committed the theft in Cause Number 571, the trial court was required to run the sentences

---

[1] Pursuant to Indiana Administrative Rule 9(G)(2)(b) and Indiana Code section 35-38-1-13, the presentence investigation (PSI) report must be excluded from public access. However, in this case, the information contained in the PSI report "is essential to the resolution" of Todd's claim of an inappropriate sentence. Ind. Admin. Rule 9(G)(7)(a)(ii)(c). Accordingly, we have included confidential information in this decision only to the extent necessary to resolve the appeal.

consecutively, resulting in an aggregate term of four years. *See* I.C. § 35-50-1-2(d)(2)(B) (2013).

[11] Notwithstanding the fact that the trial court imposed a statutorily authorized sentence, our court may revise the sentence if we find "that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). It is well established that "Indiana Appellate Rule 7(B) leaves much to the discretion of appellate courts, but it does not detract from the long-recognized principle that 'sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference.'" *Parks v. State*, 22 N.E.3d 552, 555 (Ind. 2014) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). On review, our determination of the appropriateness of a sentence "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. We focus on the length of the aggregate sentence and how it is to be served. *Id.* Our analysis is not intended "to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks omitted), *reh'g denied*. Ultimately, our goal is "to attempt to leaven the outliers[] and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, . . . not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1224.

[12] Todd bears the burden of persuading our court that her sentence is inappropriate. *See Conley*, 972 N.E.2d at 876. As such, she posits that her crimes were non-violent Class D felonies, and "her prior convictions are no doubt the product of an ongoing problem with drug addiction." (Appellant's Br. p. 17). Furthermore, she asserts that she wrote a letter to the trial court "in which she accepts responsibility for her crimes, thanked the judge for the opportunity to go through the [Diversion Program], and how that program benefitted her even though she did not successfully complete it. More importantly, the letter contained no excuses or requests for leniency." (Appellant's Br. p. 17). Reserving her leniency requests for appeal, Todd now seeks an aggregate sentence of three years, with one year executed (preferably in work release or home detention) and two years suspended to probation.

[13] Looking first to the nature of the offense, we find that Todd pled guilty to being in possession of both methamphetamine and several ingredients required for the manufacture of methamphetamine, which she admittedly intended to do in her home. Then, less than two weeks after being released on bond and while awaiting acceptance into the Diversion Program, Todd stole approximately $45.00 worth of chainsaw blades from a Sears store. As part of her plea agreement, Todd was required to complete the Diversion Program in exchange for having all of her charges dismissed. However, Todd repeatedly violated the rules of both her transitional homes and was ultimately discharged from the Diversion Program.

[14] As to the character of the offender, we find that, in addition to the instant Class D felony theft conviction, Todd has two prior felony convictions and one misdemeanor conviction for theft. Todd's criminal history also includes two misdemeanor convictions for assault and leaving the scene of an accident. In both of her prior felony theft cases, Todd received suspended sentences, which were ultimately revoked. Contrary to Todd's assertion, it is not clear from the record that her prior crimes—none of which are drug-related—were the product of her ongoing addiction with drugs. Nevertheless, Todd's longstanding substance abuse problem is apparent. She reportedly began using marijuana at age sixteen and methamphetamine at age seventeen. Until age twenty, Todd was using methamphetamine daily, but she quit using for a period of seven years. Then, at age twenty-seven, Todd resumed her methamphetamine habit and was using it two or three times per week up until her arrest in the instant case. Todd has also experimented with cocaine, ecstasy, and mushrooms, and she used Vicodin on a daily basis for over six years.

[15] In addition, we consider the fact that Todd is the mother of a nine-year-old son. She has her GED, and she is licensed by the State of Indiana as an esthetician. Todd expressed her gratitude to the court for the opportunity to participate in the Diversion Program and stated that she is "regretful and ha[s] a broken heart that [she] wasn't able to complete [the Diversion Program]." (Sentencing Tr. p. 13). Todd indicated that she wanted to achieve sobriety and better herself for her family, but when given the opportunity for rehabilitation, she admittedly lied to and manipulated the staff-members at her transitional homes. As the

trial court noted, Todd had previously "been given the benefit of jail, probation, community service, Department of Correction treatment, drug court treatment and transitional living and nothing has curtailed [her] behavior." (Sentencing Tr. p. 15). As leniency and the needs of her family have been insufficient incentives for Todd to make lasting changes in her life prior to this point, it now appears that an executed sentence is necessary to hold her accountable. Therefore, we cannot say that Todd's four-year sentence is inappropriate.

## CONCLUSION

[16] Based on the foregoing, we conclude that Todd's aggregate four-year sentence is appropriate in light of the nature of the offense and her character.

[17] Affirmed.

[18] Bailey, J. and Barnes, J. concur